UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

| | |
|---|---|
| **CANADIAN SOLAR INTERNATIONAL LIMITED; CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.; and CANADIAN SOLAR US MODULE MANUFACTURING CORPORATION**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | Ct. No. 25-159<br><br>Before: Unassigned. |

## COMPLAINT

Plaintiffs, Canadian Solar International Limited ("CSIL"); Canadian Solar Manufacturing (Thailand) Co., Ltd. ("THSM"); and Canadian Solar US Module Manufacturing Corporation ("USMMC") (together, "Canadian Solar" or "Plaintiffs"), by and through counsel, bring this Complaint against the United States of America, and allege as follows:

## DETERMINATION TO BE REVIEWED

1. Plaintiffs contest the final determination of the U.S. Department of Commerce ("Commerce" or the "Department") that crystalline silicon photovoltaic ("CSPV") cells, whether or not assembled into modules, from Thailand are being, or are likely to be, sold in the United States at less-than-fair-value. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand: Final Affirmative Determination of Sales at Less-Than-Fair-Value and Final Affirmative Determination of Critical Circumstances*, 90 Fed. Reg. 17,395 (Dep't Commerce Apr. 25, 2025) ("Final Determination") and accompanying Memorandum from

1

Elizabeth Eastwood to Christopher Abbott, *Issues and Decision Memorandum for the Final Affirmative Determination of Sales at Less Than Fair Value in the Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand*, A-549-851 (Investigation) (Dep't Commerce Apr. 18, 2025), ACCESS 4750511-02 ("Final IDM").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers on the U.S. Court of International Trade jurisdiction to review, *inter alia*, final determinations issued by Commerce under Section 516A(a)(2)(A)(i) and (B)(i) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2)(A)(i), (B)(i).

## NAME AND STANDING OF PLAINTIFFS

3. CSIL is a foreign exporter of CSPV cells, whether or not assembled into modules, from Thailand. THSM is a Thai producer of CSPV cells, whether or not assembled into modules, from Thailand. USMMC is a manufacturer in the United States of a domestic like product. CSIL, THSM, and USMMC participated in the antidumping ("AD") duty investigation that led to the challenged Final Determination through the submission of argument and factual information. Plaintiffs are therefore interested parties and parties to the proceeding within the meaning of Section 771(9)(A) of the Act, 19 U.S.C. § 1677(9)(A), (C), and have standing to bring this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. Section 516A(a)(2)(A)(i)(II) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(i), the summons must be filed within thirty (30) days of the date of publication in the *Federal Register* of the resulting AD order,

and the complement must be filed within thirty (30) days thereafter. 19 U.S.C. § 1516a(a)(2)(A)(i)(II). Commerce rendered the Final Determination on April 18, 2025, and then published the Final Determination in the *Federal Register* on April 25, 2025. Final Determination at 17,395. The AD order was published in the Federal Register on June 24, 2025. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From the Socialist Republic of Vietnam: Amended Final Antidumping Duty Determination; Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 90 Fed. Reg. 26,786 (Dep't Commerce June 24, 2025). On July 24, 2025, 30 days from Commerce's June 24, 2025, publication of the AD order, Plaintiffs filed a summons with this Court. On August 25, 2025, the first business day following thirty (30) days thereafter, Plaintiffs filed this Complaint. 1/ This action is thus timely.

## STANDARD OF REVIEW

5.      This Court reviews final determinations issued by Commerce under 19 U.S.C. § 1673d to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

6.      Canadian Solar Inc. is a globally integrated solar company legally domiciled and incorporated in Canada; registered under the laws of the Province of Ontario, Canada; and maintaining its principal executive office and place of business in Guelph, Ontario, Canada. Its indirectly majority-owned subsidiary USMMC manufactures CSPV products in the United States.

---

1/      Ct. Int'l Trade R. 6(a)(1) ("{I}f the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

CSIL, also indirectly majority-owned by Canadian Solar Inc., is a Hong Kong-based trading company that sells and exports CSPV solar products to markets around the world. CSIL exports solar products manufactured by its affiliate, THSM, to the U.S. market. THSM manufactures CSPV cells and modules at its facilities in Chonburi and Rayong, Thailand.

7. On May 14, 2024, Commerce initiated an AD investigation of CSPV cells, whether or not assembled into modules, from Thailand. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 43,809 (Dep't Commerce May 20, 2024). Following initiation, Commerce issued quantity and value ("Q&V") questionnaires to various entities, including Canadian Solar. *See* Memorandum from Scot Fullerton to Abdelali Elouaradia, *Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand*, A-549-851 (Investigation) (Dep't Commerce Nov. 27, 2024), ACCESS 4671942-02 ("Prelim. IDM") at 2. Canadian Solar timely responded to the Q&V questionnaire. On June 21, 2024, Commerce selected a single respondent for individual investigation, Trina Solar Science & Technology (Thailand) Ltd. ("TTL"). *Id*.

8. On September 20, 2024, the petitioner filed a cost-based particular market situation ("PMS") allegation, arguing that "the cost of producing subject merchandise is outside the ordinary course of trade." *Id*. at 4, 23. TTL provided rebuttal information in September and November 2024, in advance of Commerce's Preliminary Determination. *Id.* at 4–5. On November 8, 2024, Canadian Solar provided comments for consideration in the Preliminary Determination. *Id.* at 5.

9. Commerce published its Preliminary Determination on December 4, 2024. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand:*

4

*Preliminary Affirmative Determination of Sales at Less-Than-Fair-Value, Affirmative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 96,214 (Dep't Commerce Dec. 4, 2024). Commerce preliminarily calculated a weighted-average dumping margin for TTL of 77.85 percent, which Commerce assigned to all other exporters and producers, including CSIL and THSM. *Id.* at 96,216. Commerce assigned an AD cash deposit rate of 57.66 percent to all other exporters and producers. *Id.* Commerce stated that it had accepted the PMS allegation but would "address this issue subsequent to the preliminary determination in a post-preliminary analysis memorandum." Prelim. IDM at 24.

10. In its Preliminary Determination, Commerce conducted an analysis of TTL's cost of production ("COP"). As part of this COP analysis, Commerce determined a market price for solar wafers, an input in the production of solar cells. Commerce calculated a market value of $400.77/kg for wafers. Memorandum from Christopher Winfield to Stephanie Arthur, *Cost of Production and Constructed Value Calculation Adjustments for the Preliminary Determination – Trina Solar Science & Technology (Thailand) Ltd.*, A-549-851 (Investigation) (Dep't Commerce Nov. 27, 2024), ACCESS 4672460-01 at Att. 1B.

11. Following the Preliminary Determination, on January 22, 2025, Commerce requested that interested parties provide pricing information regarding wafers and solar glass. *See* Final IDM at 40. On February 5, 2025, Canadian Solar timely provided the Department with information regarding wafer industry pricing and its own wafer purchases. *Id*.

12. On March 17 and March 25, 2025, Plaintiffs timely filed a case and rebuttal brief requesting corrections to the Preliminary Determination. Final IDM at 2. Among other issues, Canadian Solar requested that Commerce correct its valuation of solar wafers in calculating TTL's

5

COP. Final IDM at 24–25. Plaintiffs argued that Commerce should not create a "market price" to value solar wafers but rather rely on actual purchases on the record. *Id*. Plaintiffs explained that if Commerce did create a market price, it should use a reliable and representative indicator and not rely on data for wafers used in non-solar applications. *Id*. Canadian Solar also requested that Commerce not implement the PMS allegation because (a) the allegation was faulty, and (b) Commerce had not provided any opportunity for parties to comment on the revised methodologies that could result from a PMS finding. *Id*. at 32–33. TTL likewise filed comments, arguing, *inter alia*, that Commerce should correct its faulty valuation of solar glass, not adopt petitioner's solar glass valuation requests, and rely on TTL's unaffiliated supplier purchase price. *See id*. at 44.

13. On March 25, 2025, the week after the deadline for case briefs, Commerce uploaded to ACCESS a post-preliminary analysis of the PMS allegation. Memorandum from Scot Fullerton to Christopher Abbott, *Less-Than-Fair-Value Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand: Post-Preliminary Analysis of the Particular Market Situation Allegation*, A-549-851 (Investigation) (Dep't Commerce Mar. 24, 2025), ACCESS 4737522-01. At this late stage, Commerce found a PMS and substantially revised TTL's COP because of the PMS. The agency, for example, revised its wafer price upward to $438.07/kg for calculating TTL's COP. *Id*. at 21. Commerce provided less than one week for parties to file comments regarding its PMS analysis. *See* Final IDM at 3. On March 31, 2025, Canadian Solar timely filed a PMS-specific brief arguing that the PMS allegation should be rejected because it was not particular and that the PMS solar wafer valuation request (particularly the use of UN Comtrade data for subheading HS 3818.00 and adoption of a

$438.07/kg figure) should be rejected as aberrational and unrepresentative of actual solar wafer prices. Final IDM at 42–43.

14. Commerce published the Final Determination on April 25, 2025. Commerce assigned TTL a weighted-average dumping margin of 111.45 percent. Final Determination at 17,397. The Department assigned all other exporters and producers, including CSIL and THSM, this 111.45 percent rate. *Id*. Commerce found that "a PMS exists with respect to the price of wafers and solar glass in Thailand, because China's dominance of the solar input market in Thailand likely contributes to a decline in the price for solar cell inputs below what the market-determined price is for inputs sold outside of China." Final IDM at 47. The agency adjusted TTL's COP to account for this PMS finding. Commerce declined to act on Plaintiffs' concerns regarding the accuracy and lawfulness of its proposed wafer valuation figures. Final IDM at 50.

## STATEMENT OF CLAIMS

### COUNT ONE

**Commerce's Calculation of a Solar Wafer Price Is Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

15. Plaintiffs hereby incorporate by reference paragraphs 1 through 14 of this Complaint.

16. Commerce's calculation of a wafer price is not supported by substantial evidence or otherwise in accordance with law. The record before the agency counseled against creation of a market price for solar wafers in valuing TTL's COP. By calculating a market price for wafers, Commerce strayed from its obligation to calculate a fair and accurate AD margin. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible."). Moreover, even if it had been appropriate to calculate a market price,

7

Commerce's chosen methodology was contrary to the agency's practice in similar proceedings and contradicted record evidence showing the proposed valuation to deviate starkly from actual solar wafer prices. Commerce's adjustment of TTL's wafer cost under the major input rule lacked substantial evidence and was contrary to law. Commerce's wafer valuation is not viable, under the major input rule, transactions disregarded rule, or PMS finding. Commerce's calculation of TTL's COP and AD margin was thus unsupported by substantial evidence and contrary to law.

## COUNT TWO

### Commerce's PMS Finding Is Not Supported by Substantial Evidence or Otherwise in Accordance with Law

17. Plaintiffs hereby incorporate by reference paragraphs 1 through 16 of this Complaint.

18. Commerce's PMS finding is not supported by substantial evidence or otherwise in accordance with law. The record of the investigation makes clear that TTL's costs are accurate, normal, and reasonable and that there is no evidence that TTL's solar input purchases are outside the ordinary course of trade due to distortions in the Thai market. Moreover, the Final Determination does not identify a PMS that is particular, focusing instead on global markets and pricing phenomena. Judicial and agency precedent, as well as Commerce regulations, make clear that PMS findings must be particular, but the Final Determination fails to observe this particularity requirement.

## COUNT THREE

### Commerce's Failure to Provide a Meaningful Opportunity to Comment on the PMS Analysis Renders the Final Determination Unsupported by Substantial Evidence and Not in Accordance with Law

19. Plaintiffs hereby incorporate by reference paragraphs 1 through 18 of this Complaint.

20. Commerce's PMS finding is faulty because the agency denied parties a meaningful opportunity to comment on the agency's adoption and implementation of the PMS allegation. Commerce issued its preliminary PMS analysis *after* the deadline for case briefs in the final days of the investigation and then allowed less than one week for supplemental briefing on a critical, novel, and complex issue. The lateness of this analysis violated Plaintiffs' procedural due process right to notice and a meaningful opportunity to be heard and constituted agency action without observance of procedure required by law. By delaying its release of the PMS analysis until the final days of the investigation, Commerce unlawfully compromised both the ability of interested parties to participate and the agency's own ability to compile a record that supports the Final Determination.

## **COUNT FOUR**

**Commerce's Valuation of Solar Glass Is Unsupported by Substantial Evidence and Contrary to Law**

21. Plaintiffs hereby incorporate by reference paragraphs 1 through 20 of this Complaint.

22. Commerce's PMS adjustment for valuing solar inputs, including solar glass, is unsupported by substantial evidence and contrary to law. In valuing solar glass, Commerce could have incorporated TTL's unaffiliated supplier purchase price, which was reliable. Commerce should not have adjusted solar glass prices using a PMS finding or transactions disregarded rule. The Final Determination's valuation of solar glass is thus unsupported by substantial evidence and contrary to law.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs request that this Court:

(a)     Hold that the Final Determination is unsupported by substantial evidence and otherwise not in accordance with law;

(b)     Remand the Final Determination with instructions to issue a new determination that is consistent with the Court's decision; and

(c)     Provide such other and further relief as this Court deems just and proper.

        Respectfully submitted,

        /s/ Jonathan T. Stoel
        Jonathan T. Stoel
        Craig A. Lewis
        Michael G. Jacobson
        Joshua E. Kurland
        Nicholas R. Sparks
        Nicholas W. Laneville
        Lindsay K. Brown

        HOGAN LOVELLS US LLP
        Columbia Square
        555 Thirteenth Street, N.W.
        Washington, DC 20004-1109
        (202) 637-6634
        jonathan.stoel@hoganlovells.com

        *Canadian Solar International Limited; Canadian Solar Manufacturing (Thailand) Co., Ltd.; and Canadian Solar US Module Manufacturing Corporation*

Date: August 25, 2025