IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| CANADIAN SOLAR INTERNATIONAL LIMITED; CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.; CANADIAN SOLAR US MODULE MANUFACTURING CORPORATION; AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE; TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD.; and M.L.T. SOLAR ENERGY PRODUCT CO., LTD., | |
| Plaintiffs and Consolidated Plaintiffs, | |
| v. | Consol. Ct. No. 25-159 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE, | |
| Defendant-Intervenor. | |

## **PROPOSED ORDER**

Upon consideration of the Motion for Judgment on the Agency Record filed by Plaintiffs, Consolidated Plaintiff-Intervenors, and Consolidated Defendant-Intervenors Canadian Solar International Limited, Canadian Solar Manufacturing (Thailand) Co., Ltd., and Canadian Solar US Module Manufacturing Corporation (together, "Plaintiffs"), and upon all other papers and proceedings had herein, it is hereby

**ORDERED** that Plaintiffs' Motion for Judgment on the Agency Record is granted; and it is further

2

**ORDERED** that this action is remanded to the U.S. Department of Commerce for the agency to issue a redetermination consistent with this Court's Opinion and Order; and it is further

**ORDERED** that the U.S. Department of Commerce shall file its remand determination with the Court within 90 days of this date.

**SO ORDERED.**

_____, Judge

Dated: _____, 2026
        New York, New York

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

CANADIAN SOLAR INTERNATIONAL LIMITED;
CANADIAN SOLAR MANUFACTURING
(THAILAND) CO., LTD.; CANADIAN SOLAR US
MODULE MANUFACTURING CORPORATION;
AMERICAN ALLIANCE FOR SOLAR
MANUFACTURING TRADE COMMITTEE; TRINA
SOLAR SCIENCE & TECHNOLOGY (THAILAND)
LTD.; and M.L.T. SOLAR ENERGY PRODUCT CO.,
LTD.,

        Plaintiffs and Consolidated Plaintiffs,

    v.                                       Consol. Ct. No. 25-159

UNITED STATES,

        Defendant,

   and

AMERICAN ALLIANCE FOR SOLAR
MANUFACTURING TRADE COMMITTEE,

        Defendant-Intervenor.

**CANADIAN SOLAR PLAINTIFFS' RULE 56.2**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Plaintiffs, Consolidated Plaintiff-Intervenors, and Consolidated Defendant-Intervenors

Canadian Solar International Limited ("CSIL"), Canadian Solar Manufacturing (Thailand) Co.,

Ltd. ("THSM"), and Canadian Solar US Module Manufacturing Corporation ("USMMC")

(together, "Canadian Solar" or "Plaintiffs") respectfully submit this Motion for Judgment on the

Agency Record in accordance with Rule 56.2 of the Rules of the United States Court of

International Trade.  For the reasons set forth in the enclosed Brief, this Court should reverse the

erroneous determination of the United States Department of Commerce in its antidumping duty

- 1 -

investigation of crystalline silicon photovoltaic cells, whether or not assembled into modules, from Thailand, and remand with instructions to recalculate the dumping margin applicable to Canadian Solar in a manner consistent with this motion and the Court's findings. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand: Final Affirmative Determination of Sales at Less-Than-Fair-Value and Final Affirmative Determination of Critical Circumstances*, 90 Fed. Reg. 17,395 (Dep't Commerce Apr. 25, 2025) (*Final Determination*), and accompanying Issues and Decision Memorandum, ACCESS 4750511-02 (P.R. 448).

Plaintiffs respectfully request, for the reasons explained in the accompanying brief, that this Court hold that the contested portions of the *Final Determination* are unsupported by substantial evidence and otherwise unlawful. Plaintiffs further request that the Court remand this matter to the U.S. Department of Commerce for disposition consistent with the order and opinion of the Court.

A proposed order is attached.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Joshua E. Kurland
Nicholas R. Sparks

**HOGAN LOVELLS US LLP**
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
E-mail: jonathan.stoel@hoganlovells.com

*Counsel to Canadian Solar International Limited, Canadian Solar Manufacturing (Thailand) Co., Ltd., and Canadian Solar US Module Manufacturing Corporation*

Dated: May 11, 2026

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| CANADIAN SOLAR INTERNATIONAL LIMITED; CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.; CANADIAN SOLAR US MODULE MANUFACTURING CORPORATION; AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE; TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD.; and M.L.T. SOLAR ENERGY PRODUCT CO., LTD., <br><br> Plaintiffs and Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE, <br><br> Defendant-Intervenor. | Consol. Ct. No. 25-159 |

**CANADIAN SOLAR PLAINTIFFS' RULE 56.2**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone:  +1.202.637.5600
Fax:  +1.202.637.5910

*Counsel to Canadian Solar International Limited, Canadian Solar Manufacturing (Thailand) Co., Ltd., and Canadian Solar US Module Manufacturing Corporation*

May 11, 2026

**TABLE OF CONTENTS**

Page

STATEMENT PURSUANT TO RULE 56.2 ................................................................................... 2

I.      Administrative Determination Under Review .................................................................. 2

II.     Statement of the Issues.................................................................................................... 3

STATEMENT OF FACTS ........................................................................................................... 3

SUMMARY OF THE ARGUMENT ............................................................................................ 7

ARGUMENT ............................................................................................................................... 8

I.      Standard of Review.......................................................................................................... 8

II.     Canadian Solar Agrees with and Incorporates by Reference All Arguments Raised by
        Mandatory Respondent TTL............................................................................................. 9

III.    Commerce's Failure to Provide a Meaningful Opportunity to Comment on Its PMS
        Findings Renders the Final Determination Unsupported by Substantial Evidence and
        Otherwise Unlawful ...................................................................................................... 10

CONCLUSION.......................................................................................................................... 15

**TABLE OF AUTHORITIES**

Page

**CASES**

*Barnhart v. United States Treasury Dep't*,
    588 F. Supp. 1432 (Ct. Int'l Trade 1984) .................................................................. 13

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962) ...................................................................................................... 8

*Ceramark Technology v. United States*,
    11 F. Supp. 3d 1317 (Ct. Int'l Trade 2014) ............................................................... 9

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) ...................................................................................................... 8

*Daewoo Elecs. Co. v. Int'l Union of Electronic Elec., Technical, Salaried & Mach. Workers,
    AFL-CIO*,
    6 F.3d 1511 (Fed. Cir. 1993) ....................................................................................... 8

*Elkem Metals Co. v. United States*,
    26 C.I.T. 234 (2002) ................................................................................................... 12

*Gallant Ocean (Thailand) Co. v. United States*,
    602 F.3d 1319 (Fed. Cir. 2010) ................................................................................... 8

*Huaiyin Foreign Trade Corp. (30) v. United States*,
    322 F.3d 1369 (Fed. Cir. 2003) ................................................................................... 8

*Huzhou Muyun Wood Co. v. United States*,
    279 F. Supp. 3d 1215 (Ct. Int'l Trade 2017) ............................................................ 13

*Mid Continent Nail Corp. v. United States*,
    34 C.I.T. 512 (2010) ................................................................................................... 13

*NLRB v. Columbian Enameling & Stamping Co.*,
    306 U.S. 292 (1939) ...................................................................................................... 8

*Nucor Corporation v. United States*,
    461 F. Supp. 3d 1374 (Ct. Int'l Trade 2020) ............................................................. 9

*PSC VSMPO-Avisma Corp. v. United States,*
    688 F.3d 751 (Fed. Cir. 2012) ................................................................................... 13

*Tianjin Magnesium Int'l Co. v. United States*,
    35 C.I.T. 187 (2011) ................................................................................................... 12

**STATUTES**

19 U.S.C. § 1516a(b) ............................................................................................................ 8

19 U.S.C. § 1677f(i)............................................................................................................9, 11

19 U.S.C. 1677m(g) ...........................................................................................................11

**REGULATIONS**

19 C.F.R. § 351.309(c)(1) ................................................................................................. 12

19 C.F.R. § 351.309(c)(2) ................................................................................................. 12

**ADMINISTRATIVE MATERIALS**

*Antidumping Duties; Countervailing Duties*,
    62 Fed. Reg. 27,296 (Dep't Commerce May 19, 1997) ............................................... 12

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From
    Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty
    Orders*,
    90 Fed. Reg. 26,786 (Dep't Commerce June 24, 2025) ............................................... 2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From
    Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-
    Than-Fair-Value Investigations*,
    89 Fed. Reg. 43,809 (Dep't Commerce May 20, 2024) ............................................... 3

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From
    Thailand: Final Affirmative Determination of Sales at Less-Than-Fair-Value and Final
    Affirmative Determination of Critical Circumstances*,
    90 Fed. Reg. 17,395 (Dep't Commerce Apr. 25, 2025) ............................................ 2, 7

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From
    Thailand: Preliminary Affirmative Determination of Sales at Less-Than-Fair-Value,
    Affirmative Determination of Critical Circumstances, Postponement of Final Determination,
    and Extension of Provisional Measures*,
    89 Fed. Reg. 96,214 (Dep't Commerce Dec. 4, 2024) ............................................... 4

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| CANADIAN SOLAR INTERNATIONAL LIMITED; CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.; CANADIAN SOLAR US MODULE MANUFACTURING CORPORATION; AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE; TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD.; and M.L.T. SOLAR ENERGY PRODUCT CO., LTD., <br><br>      Plaintiffs and Consolidated Plaintiffs, <br><br>   v. <br><br> UNITED STATES, <br><br>      Defendant, <br><br>   and <br><br> AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE, <br><br>      Defendant-Intervenor. | Consol. Ct. No. 25-159 |

**CANADIAN SOLAR PLAINTIFFS' RULE 56.2**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Plaintiffs, Consolidated Plaintiff-Intervenors, and Consolidated Defendant-Intervenors

Canadian Solar International Limited ("CSIL"), Canadian Solar Manufacturing (Thailand) Co.,

Ltd. ("THSM"), and Canadian Solar US Module Manufacturing Corporation ("USMMC")

(together, "Canadian Solar" or "Plaintiffs") respectfully submit this Motion for Judgment on the

Agency Record in accordance with Rule 56.2 of the Rules of the United States Court of

International Trade ("CIT").  For the reasons set forth below, this Court should reverse the

erroneous determination of the Department of Commerce ("Commerce") in its antidumping duty

- 1 -

("AD") investigation of crystalline silicon photovoltaic ("CSPV") cells, whether or not assembled into modules, from Thailand, and remand with instructions to recalculate the dumping margin applicable to Canadian Solar[1] in a manner consistent with this motion and the Court's findings. Moreover, in the interest of efficiency and judicial economy, Canadian Solar confirms its agreement with and incorporation of all arguments advanced by mandatory respondent Trina Solar Science & Technology (Thailand) Ltd. ("TTL") stemming from TTL's complaint filed in Case No. 25-00166 and its opening brief in this consolidated action. Canadian Solar writes separately to address an additional procedural issue warranting reversal of Commerce's determination.

## STATEMENT PURSUANT TO RULE 56.2

### I.    Administrative Determination Under Review

The administrative determination under review is the affirmative final determination of sales at less than fair value by Commerce in its antidumping duty investigation of crystalline silicon photovoltaic cells, whether or not assembled into modules, from Thailand. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand: Final Affirmative Determination of Sales at Less-Than-Fair-Value and Final Affirmative Determination of Critical Circumstances*, 90 Fed. Reg. 17,395 (Dep't Commerce Apr. 25, 2025) ("*Final Determination*"), and accompanying Issues and Decision Memorandum ("Final IDM"), ACCESS 4750511-02 (P.R. 448).[2]  The period of investigation is April 1, 2023, through March 31, 2024.

---

[1]    CSIL and THSM, as a non-examined exporter and producer of CSPV products from Thailand, respectively, are subject to Commerce's "All Others" rate of 111.45 percent.  Commerce calculated this rate for mandatory respondent TTL and applied it to "All Other" subject producers and exporters that did not otherwise receive a rate based on adverse inferences. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 90 Fed. Reg. 26,786, 26,788 (Dep't Commerce June 24, 2025).

[2]    Throughout this brief, citations to the public record ("P.R.") and confidential record ("C.R.") refer to the administrative record of the antidumping duty investigation.

II.     **Statement of the Issues**

1.      Whether Commerce's calculation of a solar wafer price for TTL, and related application of the major input rule, is supported by substantial evidence and otherwise lawful.

2.      Whether Commerce's Particular Market Situation ("PMS") findings for solar input costs in the Thai market, and related selection of benchmark values for solar wafers and solar glass, are supported by substantial evidence and otherwise lawful.

3.      Whether Commerce's failure to provide interested parties a meaningful opportunity to be heard on the PMS analysis renders Commerce's *Final Determination* unsupported by substantial evidence or otherwise unlawful.

## STATEMENT OF FACTS

On May 14, 2024, Commerce initiated an AD investigation of CSPV cells, whether or not assembled into modules, from Thailand. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 43,809 (Dep't Commerce May 20, 2024) (P.R. 60).  Following initiation, Commerce issued quantity and value ("Q&V") questionnaires to various entities, including Canadian Solar.  *See* Memorandum from Scot Fullerton to Abdelali Elouaradia, *Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand* at 2 (Dep't Commerce Nov. 27, 2024), ACCESS 4671942-02 (P.R. 356) ("Prelim. IDM").

Canadian Solar timely responded to the Q&V questionnaire.  As Canadian Solar explained, CSIL is a trading entity that exports to markets including the United States, while THSM is an affiliated Thai producer of CSPV solar cells and modules.  *See Quantity and Value Questionnaire*

- 3 -

*Response of Canadian Solar International Limited* (June 6, 2024), ACCESS 4572757-01 (P.R. 115; C.R. 32). The third Canadian Solar plaintiff, USMMC, manufactures CSPV solar modules domestically in the United States. On June 21, 2024, Commerce selected TTL as the sole respondent for individual investigation. Prelim. IDM at 2 (P.R. 356).

On September 20, 2024, the petitioner in the investigation filed a cost-based PMS allegation, arguing that "the cost of producing subject merchandise is outside the ordinary course of trade." *Id*. at 4, 23. TTL provided rebuttal information in September and November 2024, in advance of Commerce's Preliminary Determination. *Id.* at 4-5. On November 8, 2024, Canadian Solar likewise provided comments for consideration in the Preliminary Determination. *Id.* at 5.

Commerce published its Preliminary Determination on December 4, 2024, preliminarily finding that CSPV cells and modules from Thailand were sold at less than fair value in the United States. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand: Preliminary Affirmative Determination of Sales at Less-Than-Fair-Value, Affirmative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 96,214 (Dep't Commerce Dec. 4, 2024) (P.R. 367). Commerce preliminarily calculated a weighted-average dumping margin for TTL of 77.85 percent, which Commerce assigned to all other exporters and producers, including CSIL and THSM. *Id.* at 96,216. Commerce also assigned an AD cash deposit rate (adjusted for subsidy offsets) of 57.66 percent to all other exporters and producers. *Id.* Commerce stated that it had accepted the PMS allegation but would "address this issue subsequent to the preliminary determination in a post-preliminary analysis memorandum." Prelim. IDM at 24 (P.R. 356).

In its Preliminary Determination, Commerce conducted an analysis of TTL's cost of production ("COP"). As part of this COP analysis, Commerce determined a market price for solar

- 4 -

wafers, an input in the production of solar cells. Commerce calculated a market value of $400.77/kg for wafers. Memorandum from Christopher Winfield to Stephanie Arthur, *Cost of Production and Constructed Value Calculation Adjustments for the Preliminary Determination – Trina Solar Science & Technology (Thailand) Ltd.* at Att. 1B (Dep't Commerce Nov. 27, 2024), ACCESS 4672460-01 (P.R. 360).

Following the Preliminary Determination, on January 22, 2025, Commerce requested that interested parties provide pricing information regarding wafers and solar glass in connection with the PMS allegation. *See* Final IDM at 48 (P.R. 448). On February 5, 2025, Canadian Solar timely provided Commerce with information regarding wafer industry pricing and its own wafer purchases. *See* Memorandum from Joshua Jacobson to The File, *Proposed Data Sources for PMS Adjustments*, (Dep't Commerce Apr. 18, 2025), ACCESS 4755116-01 (P.R. 455; C.R. 286); *Canadian Solar's Response to Commerce's Request for Wafer Pricing Information* (Feb. 5, 2025), ACCESS 4709956-01–02, 4709963-01 (P.R. 402; C.R. 242-44).

On March 17 and March 25, 2025, Canadian Solar timely filed case and rebuttal briefs requesting corrections to Commerce's Preliminary Determination. *See* Final IDM at 2 (P.R. 448). Among other issues, Canadian Solar requested that Commerce correct its valuation of solar wafers in calculating TTL's cost of production. *Id.* at 24-25. Canadian Solar argued that Commerce should not create a "market price" to value solar wafers but rather rely on the actual purchase data on the record. *Id.* Canadian Solar also explained that, if Commerce did create a market price, it should use a reliable and representative indicator and not rely on data for wafers used in non-solar applications. *Id.*; *Case Brief of Canadian Solar* at 23-32 (Mar. 17, 2025), ACCESS 4732673-01 (P.R. 419; C.R. 267). Canadian Solar additionally argued in its rebuttal brief that Commerce should not implement the PMS allegation because (a) the allegation was faulty, and (b) Commerce

had not provided any opportunity for parties to comment on the revised methodologies that could result from a PMS finding. Final IDM at 35 (P.R. 448); *Rebuttal Brief of Canadian Solar* at 2-3, 4-9 (Mar. 25, 2025), ACCESS 4737523-01 (P.R. 428; C.R. 274). TTL likewise filed comments arguing (among other issues) that Commerce should correct its faulty valuation of solar glass, not adopt the petitioner's solar glass valuation requests, and instead rely on TTL's unaffiliated supplier purchase price. Final IDM at 44 (P.R. 448).

On March 25, 2025, the week *after* the deadline for case briefs, Commerce uploaded to ACCESS a post-preliminary analysis of the PMS allegation. Memorandum from Scot Fullerton to Christopher Abbott, *Post-Preliminary Analysis of the Particular Market Situation Allegation* (Dep't Commerce Mar. 24, 2025), ACCESS 4737520-01–02 (P.R. 426; C.R. 272-73) ("Post-Preliminary PMS Analysis"). At this extremely late stage, Commerce found a PMS and substantially revised TTL's cost of production based on the PMS. The agency, for example, revised its wafer price for calculating TTL's COP upward to $438.07/kg (from the $400.77/kg figure used in the Preliminary Determination and addressed in Canadian Solar's case brief). *Id.* at 21.

After neglecting to address the PMS allegation for months prior to the case brief deadline, Commerce provided less than one week for parties to file comments regarding the complex issues presented by its PMS analysis. Final IDM at 3 (P.R. 448); *see also* Memorandum from Stephen Bailey to The File, *Briefing Schedule for Case and Rebuttal Briefs: Particular Market Situation Analysis* (Mar. 25, 2025), ACCESS 4737524-01 (P.R. 427) ("PMS Briefing Schedule"). Despite the truncated timeframe, on March 31, 2025, Canadian Solar timely filed a PMS-specific brief arguing that the PMS allegation should be rejected because it was not particular and that the petitioner's PMS solar wafer valuation request—particularly its use of United Nations Comtrade data for subheading HS 3818.00 and adoption of a $438.07/kg figure—should be rejected as

- 6 -

aberrational and unrepresentative of actual solar wafer prices.  Final IDM at 42-43 (P.R. 448); *PMS Analysis Case Brief of Canadian Solar* (Mar. 31, 2025), ACCESS 4740617-01 (P.R. 436; C.R. 279).

Commerce published its *Final Determination* on April 25, 2025.  Commerce assigned TTL a weighted-average dumping margin of 111.45 percent.  *Final Determination*, 90 Fed. Reg. at 17,397.  It assigned all other exporters and producers, including CSIL and THSM, this same 111.45 percent rate.  *Id.*  Commerce found that "a PMS exists with respect to the price of wafers and solar glass in Thailand, because China's dominance of the solar input market in Thailand likely contributes to a decline in the price for solar cell inputs below what the market-determined price is for inputs sold outside of China."  Final IDM at 47 (P.R. 448).  As noted above, the agency substantially adjusted TTL's cost of production to account for this PMS finding.  Commerce also declined to act on Canadian Solar's and TTL's concerns regarding the accuracy and lawfulness of its proposed wafer and solar glass valuation figures.  *Id.* at 50-51.

This consolidated action followed.

## SUMMARY OF THE ARGUMENT

This Court should reverse and remand Commerce's flawed determination for each of the reasons articulated in TTL's opening brief, namely that: (1) Commerce's market price calculation for solar wafers (predating its PMS analysis) is unsupported and unlawful; (2) Commerce's PMS finding should be rejected because TTL's costs are reasonable and Commerce's PMS finding is unsupported; and (3) Commerce's benchmark selections for valuing solar wafers and solar glass in connection with its PMS finding are unsupported and aberrational.  Additionally, however, this Court should reverse the PMS determination because it is a product of a flawed procedural process.  By waiting to issue its preliminary PMS findings until *after* parties had submitted their case briefs,

and then providing only a truncated six-day period within which to comment, Commerce deprived parties of a meaningful opportunity to analyze and address the significant issues involved.  This procedural defect underscores why the PMS determination should be reversed and remanded.

## ARGUMENT

### I.    Standard of Review

This court "shall hold unlawful any determination" found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citation omitted).  Substantial evidence must be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established."  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).  In making its judgment, the Court "reviews the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (citation and quotation marks omitted), and determines "whether the evidence and reasonable inferences from the record support {the agency's} finding." *Daewoo Elecs. Co. v. Int'l Union of Electronic Elec., Technical, Salaried & Mach. Workers*, *AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (citation and quotation marks omitted); *see also Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) ("We determine the existence of substantial evidence by considering the record as a whole, including {detracting evidence}") (citation omitted).

Moreover, Commerce must provide a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).  Thus, Commerce is required by law to include in its final determination "an explanation of the basis for

- 8 -

its determination that addresses relevant arguments{}, made by interested parties who are parties to the investigation or review." 19 U.S.C. § 1677f(i)(3)(A). Commerce's "total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders {a determination} unsupported by substantial evidence." *Ceramark Technology v. United States*, 11 F. Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014) (citation omitted). Likewise, this Court will not sustain Commerce's determination if Commerce fails to address a party's relevant argument. *See Nucor Corporation v. United States*, 461 F. Supp. 3d 1374, 1380 (Ct. Int'l Trade 2020) (citation omitted).

## II.    Canadian Solar Agrees with and Incorporates by Reference All Arguments Raised by Mandatory Respondent TTL

Canadian Solar agrees with all arguments in TTL's Complaint and Opening Brief, and in the interest of judicial efficiency and economy, joins and incorporates these arguments by reference. Specifically, Canadian Solar asserts the following:

(1)    Commerce's market price calculation for solar wafers is not supported by substantial evidence or otherwise lawful. In calculating a market price for wafers, Commerce failed to rely on evidence of actual solar wafer prices and neglected its obligation to calculate a fair and accurate AD margin.

(2)    Commerce's PMS finding is not supported by substantial evidence or otherwise lawful because TTL's costs are accurate, normal, and reasonable, while Commerce's PMS finding fails to address the particularity requirement set forth in judicial and agency precedent, as well as Commerce's regulations. Commerce relied on data illustrating the Chinese market's impact on global prices rather than Thai prices. Regardless of the broad scope with which Commerce applied the PMS

finding, there is no evidence to suggest that TTL's solar input purchases are outside the ordinary course of trade due to distortions within the Thai market.

(3)    Further, Commerce's benchmark selections for valuing solar wafers and solar glass stemming from its PMS finding were improper, unsupported by substantial evidence, and contrary to law.  Commerce should have incorporated TTL's reliable unaffiliated supplier purchase prices to assess the values of solar inputs, rather than relying on an unsubstantiated PMS finding and over-inclusive export data that rendered the final benchmark values highly aberrational.

In parallel to raising and incorporating these arguments, Canadian Solar writes separately to discuss an additional procedural issue that renders Commerce's *Final Determination* unlawful.

## III.    Commerce's Failure to Provide a Meaningful Opportunity to Comment on Its PMS Findings Renders the *Final Determination* Unsupported by Substantial Evidence and Otherwise Unlawful

Commerce's failure to provide parties a meaningful opportunity to comment on the agency's adoption and implementation of the PMS allegation provides a further reason that the *Final Determination* is unsupported by substantial evidence and otherwise unlawful.

The record shows how Commerce deprived parties of a meaningful opportunity to address the PMS issue.  Commerce published its Preliminary Determination in December 2024, almost three months after petitioner filed its cost-based PMS allegation, and in doing so, it merely acknowledged the allegation while indicating it would provide "a post-preliminary analysis memorandum."  Prelim. IDM at 24 (P.R. 356).  Commerce nonetheless failed to issue its "Post-Preliminary Analysis of the Particular Market Situation Allegation" memorandum until the entire proceeding was nearly complete.  *See* Post-Preliminary PMS Analysis (P.R. 426; C.R. 272-73).

In fact, Commerce issued the post-preliminary memorandum so late in the proceeding that Canadian Solar and TTL already had filed timely case briefs, consistent with Commerce's obligation under the governing statute and regulations to grant parties an opportunity to comment on its methodological choices and findings prior to its final determination. *See* Final IDM at 2 (P.R. 448). Despite the importance and complexity of the issues surrounding the PMS allegation, Commerce issued its PMS finding and analysis (without warning) a week *after* the deadline for submitting case briefs—and then afforded parties a total of six days to respond to its new finding. *See* PMS Briefing Schedule (P.R. 427). Such a truncated period is inadequate for parties to analyze and address the significant issues stemming from a new PMS finding, and this procedural flaw provides further context for the substantive flaws in Commerce's findings.

The governing statute and Commerce's regulations make clear that interested parties are entitled to a meaningful opportunity to comment on critical data and the agency's preliminary findings during the course an AD investigation. Congress directed that: "Information that is submitted on a timely basis to {Commerce} during the course of {an AD investigation} shall be subject to comment by other parties to the proceeding within such reasonable time as {Commerce} shall provide." 19 U.S.C. 1677m(g). Likewise, Congress directed in 19 U.S.C. 1677f(i) that Commerce publish its preliminary determinations and address in its final determinations "relevant arguments, made by interested parties who are parties to the investigation." 19 U.S.C. 1677f(i)(3)(A). Commerce's regulations correspondingly reflect the right to a meaningful opportunity to comment. They provide that, in AD investigations, interested parties by default have *50 days* to prepare case briefs following publication of Commerce's preliminary

determination.   19 C.F.R. § 351.309(c)(1)(i).[3]   Case briefs "must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination."  19 C.F.R. § 351.309(c)(2).  As the agency explained in adopting the regulation, the "purpose of case briefs" is "to comment on *what the Department did in its preliminary determination* and to place before the Department any arguments that continue, in the submitter's view, to be relevant to the Secretary's final determination . . . ."  *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,335 (Dep't Commerce May 19, 1997) (emphasis added).  Consistent with the statute, the regulations assume that interested parties will have the opportunity to meaningfully address key methodological issues articulated by the agency well in advance of the final determination.

This Court has recognized that Commerce must give parties a meaningful opportunity to be heard in the course of AD proceedings.  The Court has explained that "the contours of {due process} rights in {the AD} context are grounded in the statutory scheme and reasonable administration thereof."  *Tianjin Magnesium Int'l Co. v. United States*, 35 C.I.T. 187, 192 (2011) (assessing whether a respondent was denied due process right to comment on Commerce analysis and information in an AD review).  Likewise, the Court has explained that it need not resort to constitutional due process analysis when Commerce violates its statutory or regulatory obligations under the governing administrative scheme.  *See Elkem Metals Co. v. United States*, 26 C.I.T. 234, 242 (2002) (citations omitted).

Consequently, this Court has remanded Commerce decisions as unlawful when the agency failed to provide interested parties a meaningful opportunity to comment.  For example, in *Huzhou*

---

[3]     In practice, interested parties frequently have many more than 50 days from the preliminary determination in an AD investigation to prepare their case briefs.  Here, for example, interested parties filed their case briefs on March 17, 2025, 103 days after the December 4, 2024, Preliminary Determination and seven days before Commerce's March 25, 2025 issuance of its PMS Analysis.

*Muyun Wood Co. v. United States*, the Court held that Commerce's placement of information on the record one week before the record closed denied interested parties the opportunity to meaningfully comment.  279 F. Supp. 3d 1215, 1225 (Ct. Int'l Trade 2017) ("Commerce placed a large amount of data on the record seven days prior to closing the record, and did not specify the single element of that data that would ultimately be used in its new shipper analysis.").  The Court further observed that Commerce's refusal to provide a meaningful opportunity to comment undermined Commerce's own ability to "calculate antidumping duty margins as accurately as possible."  *Id*.  That is, Commerce hinders its ability to determine fair and accurate AD margins when it denies parties a meaningful opportunity to comment on critical data and analysis.  *Cf. PSC VSMPO-Avisma Corp. v. United States,* 688 F.3d 751, 761 (Fed. Cir. 2012) ("The due process right to which {an AD review respondent} was entitled was 'the right to notice and a meaningful opportunity to be heard.'") (citation omitted); *Mid Continent Nail Corp. v. United States*, 34 C.I.T. 512, 517 (2010) (considering whether interested parties received a meaningful opportunity to comment on an AD methodological issue and citing *Barnhart v. United States Treasury Dep't*, 588 F. Supp. 1432, 1438 (Ct. Int'l Trade 1984) ("Where a right to be heard exists, due process requires that right be accommodated at a meaningful time and in a meaningful manner.")).

In this investigation, Commerce denied parties a meaningful opportunity to be heard when it announced its critical PMS Analysis *after* submission of the case briefs and then gave parties only a handful of days to prepare new, supplemental briefs to address this major issue.  The PMS allegation was filed on September 20, 2024, meaning the agency required more than *six months* to assess the complex issues that it implicated and issue its preliminary findings.  After taking more than half a year to develop that analysis, Commerce then gave interested parties less than one week

- 13 -

to prepare supplemental briefs to address all the issues and methodological decisions contained in the PMS finding.  This was not a meaningful opportunity to be heard.

The procedural flaws in Commerce's PMS determination undercut its legitimacy and should inform this Court's review of the determination.  Substantively, Commerce's PMS finding and associated valuation decisions are defective for the reasons detailed in TTL's opening brief and incorporated by reference here.  The foregoing demonstrates, however, that Commerce's flawed PMS analysis was the result of a defective process that shut the door on a meaningful response from the parties impacted by Commerce's PMS decision.  If interested parties had received the meaningful opportunity to comment afforded by the statute and regulations, and recognized by CIT precedent, they could have further developed their arguments regarding the flaws in Commerce's preliminary findings and the data on which it relied.  Moreover, once presented with Commerce's findings and analysis, parties could have sought to supplement the record to address specific issues that Commerce belatedly raised.

Thus, Commerce's refusal to provide this meaningful opportunity during the underlying investigation renders the *Final Determination* unlawful and provides a further basis for this Court to reverse and remand the PMS determination.

## CONCLUSION

For these reasons, Canadian Solar respectfully requests that this Court grant this Motion

for Judgment on the Agency Record and remand this case to Commerce with instructions to revise

its determination accordingly.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Joshua E. Kurland
Nicholas R. Sparks

**HOGAN LOVELLS US LLP**
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone:  +1.202.637.5600
Fax:  +1.202.637.5910
E-mail: jonathan.stoel@hoganlovells.com

*Counsel to Canadian Solar International Limited, Canadian Solar Manufacturing (Thailand) Co., Ltd., and Canadian Solar US Module Manufacturing Corporation*

Dated: May 11, 2026

- 15 -

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jonathan T. Stoel, hereby certify that this brief complies with the word limitations set forth in the Court's April 20, 2026, Amended Scheduling Order. ECF No. 33. Excluding the table of contents, table of authorities, and signature block, the word count for this brief is 3,918 words. This brief thus complies with the Court's Order, which permits up to 14,000 for the Opening Brief.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel

Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109

*Counsel to Canadian Solar International Limited, Canadian Solar Manufacturing (Thailand) Co., Ltd., and Canadian Solar US Module Manufacturing Corporation*

Dated: May 11, 2026